The TORRINGTON COMPANY, Plaintiff,

Federal–Mogul Corporation,
Plaintiff–Intervenor,

v.

UNITED STATES, Defendant,

SKF USA Inc. and SKF (U.K.) Limited,
Defendant–Intervenors.

Court No. 91–08–00570.

United States Court of
International Trade.

June 9, 1993.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Geert De Prest, Margaret E.O. Edozien, William A. Fennell, Wesley K. Caine, Myron A. Brilliant, Robert A. Weaver and Amy S. Dwyer, Washington, DC, for plaintiff The Torrington Co.

Frederick L. Ikenson, P.C., Frederick L. Ikenson, J. Eric Nissley and Joseph A. Per-
na, V, Washington, DC, for plaintiff-intervenor Federal–Mogul Corp.

Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Velta A. Melnbrencis and Jane E. Meehan; of counsel: John D. McInerney, Acting Deputy Chief Counsel for Import Admin., Dean A. Pinkert and Stephen J. Claeys, Attorney–Advisors, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendant.

Howrey & Simon, Herbert C. Shelley, Scott A. Scheele, Alice A. Kipel, Thomas J. Trendl and Juliana M. Cofrancesco, Washington, DC, for defendant-intervenors SKF USA Inc. and SKF (U.K.) Ltd.

### OPINION

TSOUCALAS, Judge:

Plaintiff, The Torrington Company ("Torrington"), commenced this action to challenge certain aspects of the Department of Commerce, International Trade Administration's ("ITA") final results in the first administrative review of imports of antifriction bearings from the United Kingdom. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the United Kingdom; Final Results of Antidumping Duty Administrative Reviews ("Final Results")*, 56 Fed.Reg. 31,769 (1991). Substantive issues raised by the parties in the underlying administrative proceeding were addressed by the ITA in the issues appendix to *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany; Final Results of Antidumping Duty Administrative Review ("Issues Appendix")*, 56 Fed. Reg. 31,692 (1991).

### Background

On June 11, 1990, the ITA initiated an administrative review of imports of ball bearings, cylindrical roller bearings and parts thereof from the United Kingdom. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thai-*

*land and the United Kingdom Initiation of Antidumping Administrative Reviews*, 55 Fed.Reg. 23,575 (1990).

On March 15, 1991, the ITA published its preliminary determination in the administrative review. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the United Kingdom; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews*, 56 Fed.Reg. 11,197 (1991).

On July 11, 1991, the ITA published its Final Results in this proceeding. *Final Results*, 56 Fed.Reg. 31,769.

Torrington moves pursuant to Rule 56.1 of the Rules of this Court for judgment on the agency record alleging that the following actions by the ITA were unsupported by substantial evidence on the administrative record and not in accordance with law: the ITA's (1) use of a methodology for adjusting United States price ("USP") and Foreign Market Value ("FMV") for the United Kingdom's value added tax ("VAT") that granted a circumstance of sale ("COS") adjustment to FMV to achieve tax neutrality; (2) method of calculating cash deposit rates for estimated duties; (3) in regard to exporter's sales price ("ESP") transactions, allowance of an adjustment to FMV for inventory carrying costs; and (4) failure to verify SKF (U.K.) Limited's ("SKF") cost response. *Memorandum in Support of Plaintiff's Motion for Judgment on the Agency Record ("Torrington's Memorandum")* at 5–26.

### Discussion

This Court's jurisdiction over this matter is derived from 19 U.S.C. § 1516a(a)(2) (1988) and 28 U.S.C. § 1581(c) (1988).

■ A final determination by the ITA in an administrative proceeding will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206,

216, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States*, 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

### 1. Circumstance of Sale Adjustment to FMV for Value Added Tax

Torrington challenges the ITA's use of a methodology for adjusting USP and FMV for the United Kingdom's VAT that granted a COS adjustment to FMV to achieve tax neutrality. *Torrington's Memorandum* at 10–14.

Defendant argues that its actions were supported by substantial evidence on the administrative record and otherwise in accordance with law. *Defendant's Memorandum in Opposition to Plaintiff's Motion for Judgment Upon the Agency Record ("Defendant's Memorandum")* at 13–39.

For a more detailed discussion of Torrington and defendant's arguments on this issue, see this Court's decision in *Torrington Co. v. United States*, 17 CIT ——, ——, 818 F.Supp. 1563 (1993).

SKF agrees with the defendant's arguments on this issue. *Opposition of SKF USA Inc. and SKF (U.K.) Limited to Torrington's Motion for Judgment on the Agency Record ("SKF's Opposition")* at 9–13.

■ This Court has fully addressed these arguments and adheres to its decision on this issue in *Federal–Mogul Corp. v. United States*, 17 CIT ——, ——, 813 F.Supp. 856 (1993). This Court remands this issue to the ITA to allow the ITA to add the full amount of VAT paid on home market sales to FMV without adjustment in conformity with this Court's remand instructions in *Federal–Mogul*, 17 CIT at ——, 813 F.Supp. 856.

### 2. Calculation of Cash Deposit Rates

In this administrative review, the ITA used two different methodologies for the actual calculation of dumping margins in cases where ESP sales were used: one for assessing duties on entries covered by the review, and the other for setting the cash deposit rate on future entries of the subject merchandise. *Final Results*, 56 Fed.Reg. at 31,771–72; *Issues Appendix*, 56 Fed.Reg. at

31,698–702. To calculate the assessment rate for ESP sales, the ITA "divide[d] the total PUDD [potential uncollected dumping duties—calculated as the total difference between foreign market value and U.S. price for an exporter] for the reviewed sales by the *total entered value* of those reviewed sales...." *Issues Appendix,* 56 Fed.Reg. at 31,698–99 (emphasis added). To calculate the estimated cash deposit rate for ESP sales, the ITA "divided the total PUDD for each exporter by the *total net U.S. price* for that exporter's sales...." *Id.* at 31,699 (emphasis added).

Torrington argues that the ITA's use of a methodology which results in an estimated cash deposit rate different from the assessment duty rate was unsupported by substantial evidence on the record and not in accordance with law. *Torrington's Memorandum* at 5–10.

Defendant argues that its actions were supported by substantial evidence on the administrative record and otherwise in accordance with law. *Defendant's Memorandum* at 6–13. In addition, defendant argues that this issue is moot because of the publication of superseding cash deposit rates in *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews,* 57 Fed.Reg. 28,360 (1992). *Defendant's Memorandum* at 3–6.

For a more detailed discussion of Torrington and defendant's arguments on this issue, see this Court's decision in *Torrington Co.,* 17 CIT at ——, 818 F.Supp. 1563.

SKF agrees with the defendant's arguments on this issue. *SKF's Opposition* at 5–9.

The Court agrees with the defendant that this issue is now moot. However, the Court directs the defendant to this Court's decision

on this issue in *Federal–Mogul,* 17 CIT at ——, 813 F.Supp. 856.

### 3. *Inventory Carrying Costs*

In the Final Results of this administrative review the ITA correctly adjusted ESP for imputed inventory carrying costs pursuant to 19 U.S.C. § 1677a(e)(2) (1988). Torrington does not challenge this adjustment.

Pursuant to its new administrative practice, the ITA also made a corresponding adjustment to FMV for imputed inventory carrying costs when comparing ESP sales to FMV sales.

Torrington objects to this adjustment by the ITA to FMV for imputed inventory carrying costs. *Torrington's Memorandum* at 14–20.

For a detailed discussion of Torrington and defendant's arguments on this issue, see this Court's decision in *Torrington Co.,* 17 CIT at ——, 818 F.Supp. 1563.

SKF agrees with the defendant's arguments on this issue. *SKF's Opposition* at 13–16.

■ This Court adheres to its decision on this issue in *Torrington Co.,* 17 CIT at ——, 818 F.Supp. 1563, and finds that the ITA's adjustment to FMV for imputed inventory carrying costs pursuant to 19 C.F.R. § 353.-56(b)(2) (1991) was a reasonable exercise of the ITA's discretion in implementing the antidumping duty statute and is affirmed.

### 4. *Failure to Verify SKF's Cost Response*

On October 9, 1990, Torrington requested the ITA to conduct verification of all responses submitted in this administrative review, including SKF's cost response, pursuant to 19 U.S.C. § 1677e(b) (1988) and 19 C.F.R. § 353.36 (1991).[1] Administrative Record

---

1. 19 U.S.C. § 1677e(b) states in pertinent part:

(b) Verification
    The administering authority shall verify all information relied upon in making—

. . . . .

    (3) a review and determination under section 1675(a) of this title, if—
(A) verification is timely requested by an interested party ..., and

(B) no verification was made under this paragraph during the 2 immediately preceding reviews and determinations under that section of the same order, finding, or notice, *except that this clause shall not apply if good cause for verification is shown.*
(Emphasis added).
    Since this was the first review of the outstanding antidumping duty order regarding antifriction bearings from the United Kingdom, the ITA

United Kingdom Public Document No. ("AR UK Pub. Doc. No.") 131. SKF had not yet submitted its cost response to the ITA. AR UK Pub. Doc. No. 136.

After SKF submitted its cost response, Torrington renewed its request for verification alleging that SKF's cost response was missing important information and that some of the information reported was inconsistent. AR UK Pub. Doc. Nos. 218, 231.

After the outbreak of the Persian Gulf War, the ITA decided to cancel verification of certain respondent's information. However, evidence on the administrative record shows that the ITA never intended to verify SKF's cost response and that Torrington was aware of the ITA's intention not to verify. AR UK Pub. Doc. Nos. 174, 185, 222. In a letter dated January 25, 1991, Torrington refers to the ITA's decision not to verify SKF's cost response and goes on to request the ITA to reschedule the verifications it was canceling or for the ITA to conduct limited verification in Washington, D.C. AR UK Pub. Doc. No. 222. The ITA refused Torrington's request.

Torrington argues that 19 U.S.C. § 1677e(b)(3)(B) requires the ITA to verify all information used in an administrative review "if good cause for verification is shown." Torrington cites to the House of Representatives Ways and Means Committee's report on the Trade Remedies Reform Act of 1984, which was later incorporated into the Trade and Tariff Act of 1984, for a definition of "good cause." The Report states that "[g]ood cause could be such factors as a significant issue of law or fact, changed or special circumstances, discrepancies found in previous verifications, or the likelihood of a significant impact on the result." H.R.Rep. No. 725, 98th Cong., 2d Sess. 43 (1984). Tor-

rington argues that anytime these or comparable circumstances are shown to exist, verification is required. *Torrington's Memorandum* at 23–25.

Torrington argues that the analysis of SKF's cost response that it presented to the ITA showed that discrepancies in the response proved that good cause existed for verification of SKF's cost response. *Id.* at 25. Torrington argues that at a minimum the ITA should have conducted a modified form of verification of SKF's cost response in Washington, D.C. *Id.* at 26.

Torrington also points out that verification of SKF's cost response in the original less-than-fair-value ("LTFV") investigation turned up discrepancies which the ITA required SKF to remedy. *Id.* at 21.

Defendant argues that Torrington waived its request for verification by not specifically raising the issue of the ITA's failure to verify SKF (U.K.) Limited's cost response in its case or rebuttal briefs before the administrative agency. As a result, the ITA was unaware that this was an issue which Torrington continued to pursue and did not specifically address it in the Final Results. *Defendant's Memorandum* at 47 n. 71.

Defendant also argues that Torrington failed to show that good cause for verification of SKF's cost response existed. Defendant argues that the ITA correctly requires more than mere speculation by a party requesting verification in order for the ITA to find that good cause for verification exists. Defendant argues that the ITA will not find good cause to verify if a request to verify is made prior to the submission of the data to be verified. Defendant also argues that the ITA will not find good cause to verify if the ITA finds that

---

was only required to conduct verification if timely requested by an interested party and only if good cause for verification was shown.

The relevant section of the ITA's regulations state:

§ 353.36 **Verification of information.**

(a) *In general.* (1) The Secretary will verify all factual information the Secretary relies on in:

. . . . .

(iv) The final results of an administrative review under § 353.22(c) or (f) if the Secretary decides that good cause for verification exist; and

(v) The final results of an administrative review under § 353.22(c) if:

(A) An interested party ... not later than 120 days after the date of publication of the notice of initiation of review, submits a written request for verification; and

(B) The Secretary conducted no verification under this paragraph during either of the two immediately preceding administrative reviews. 19 C.F.R. § 353.36.

a respondent has addressed any perceived deficiencies in its responses and the party requesting verification has not shown that any remaining deficiencies will have an impact on dumping margins. *Id.* at 49.

Specifically, defendant argues that the ITA evaluated SKF's cost response, deficiency responses and its other responses and found the information submitted to be credible. Therefore, the ITA determined that there was no need to verify SKF's cost response. *Id.* at 51–52.

Defendant also points out that Torrington failed to substantiate that any remaining problems with SKF's cost response would have a significant effect on SKF's dumping margin. *Id.* at 52.

Finally, defendant points out that the ITA did consider conducting limited verifications in Washington, D.C., but rejected the idea for logistical and procedural reasons. Defendant states that the largest problem with verifications in Washington was that the ITA could not rely on the veracity of documents submitted under such a procedure. *Id.* at 53–54.

SKF agrees with the defendant's arguments on this issue. *SKF's Opposition* at 17–20.

In response to defendant, Torrington argues that the fact that the ITA originally scheduled verification of SKF's cost response, but canceled it at least in part due to the outbreak of the Persian Gulf War, supports Torrington's contention that good cause for verification existed. *Reply of The Torrington Company, Plaintiff, to Responses of Defendant and Defendant–Intervenors to Torrington's Motion for Judgment Pursuant to Rule 56.1 ("Torrington's Reply")* at 16–17.

Torrington points out that the defendant's argument that Torrington's request for verification was invalid because it was filed prior to the submission of SKF's response data is misplaced because Torrington was required by 19 C.F.R. § 353.36(a)(v)(A) to request verification within 120 days of the initiation of review, which means the request had to be filed no later than October 9, 1990. SKF's cost response was filed on October 18, 1990.

*Torrington's Reply* at 17; *see* AR UK Pub. Doc. No. 136.

Further, Torrington argues that the defendant's argument that a request for verification for good cause must substantiate the degree of impact of any alleged deficiencies in a response on a respondent's dumping margin imposes an impossible standard for showing good cause. Torrington argues that given the complexity of responses to be analyzed and the time constraints involved, it would be impossible for a domestic interested party to meet this burden. *Torrington's Reply* at 18.

Finally, Torrington argues that the defendant's argument that verification in Washington, D.C. was rejected for logistical and procedural reasons is weak. *Id.* at 18–20.

■ As an initial matter, this Court finds that Torrington did not waive its request for verification because it did discuss the failure to verify in its general issues case brief. Administrative Record General Issues Document No. 146. In addition, there is no support for Torrington's contention that the ITA should have conducted limited verification in Washington, D.C.

After examining the administrative record, this Court finds that the ITA never decided to conduct verification of SKF's cost response. *See* AR UK Pub. Doc. Nos. 174, 185, 222. In addition, the ITA sent SKF a deficiency letter requesting SKF to supplement its cost response to deal with many of the problems identified by Torrington. AR UK Pub. Doc. No. 163. SKF provided all the information requested by the ITA. AR UK Pub. Doc. No. 187. ITA deemed SKF's cost response and supplemental submissions adequate and used SKF's cost data for the Final Results.

■ Torrington argues that if good cause, defined "as a significant issue of law or fact, changed or special circumstances, discrepancies found in previous verifications, or the likelihood of a significant impact on the result" or comparable circumstances, exist the ITA is *required* to conduct verification. *Torrington's Memorandum* at 23 (*quoting* H.R.Rep. No. 725, 98th Cong., 2d Sess. 43). The above quotation represents examples of

what Congress thought *could* be considered good cause. Nothing leads this Court to the conclusion that the presence of any one of these circumstances requires the ITA to conduct verification.

Torrington argues that there were significant issues of fact in dispute in regard to SKF's cost response and that there had been significant problems with verification in the LTFV investigation. However, the ITA was aware of these issues and specifically dealt with, and resolved them, to its satisfaction. AR Pub. Doc. Nos. 163, 187.

■ However, this Court believes the ITA goes too far in arguing that a party requesting verification for good cause must be able to substantiate the degree of impact alleged problems will have on the respondent's dumping margin. All that is required is that the party requesting verification present a reasonable argument that there will be a significant impact. This does not mean that the party must exactly quantify the impact on the dumping margin.[2]

■ But even a showing of a potentially significant impact on dumping margins is not enough. The statute and regulations clearly leave to the ITA's discretion the determination of whether good cause for verification exists. 19 U.S.C. § 1677e(b); 19 C.F.R. § 353.36(a)(iv). If the ITA is satisfied with a respondent's data and determines that good cause to verify does not exist, and the ITA's determination is supported by substantial evidence on the administrative record, this Court will uphold the ITA's determination. 19 U.S.C. § 1516a(b)(1)(B).

■ As discussed above, the ITA closely examined SKF's cost response, requested additional information, and decided that good cause for verification did not exist. This Court finds that in this case, the ITA's determination was supported by substantial evidence on the administrative record and is affirmed.

*Conclusion*

In accordance with the foregoing opinion, this case is remanded to the ITA to add the full amount of VAT paid on each sale in the home market to FMV without adjustment. ITA's determination is affirmed in all other respects. Remand results are due within thirty (30) days of the date this opinion is entered. Any comments or responses by the parties to the remand results are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.

## *ORDER*

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

ORDERED that plaintiff's motion for judgment on the agency record is granted in part and this case is remanded to the Department of Commerce, International Trade Administration ("ITA"), to add the full amount of value added tax paid on each sale in the home market to foreign market value without adjustment; and it is further

ORDERED that the ITA's determination is affirmed in all other respects; and it is further

ORDERED that remand results are due within thirty (30) days of the date this opinion is entered, comments or responses by the parties to the remand results are due within thirty (30) days thereafter and any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.

---

2. In certain cases a significant impact could be 0.01% if it means the difference between assessment of duties and having a *de minimis* margin.